ANNA K. GILMAN & als., *Ex'rs, versus* WILLIAM H. HEALY.

At common law, the discharge of a debt by one of several executors, is valid and binds the others.

When two joint executors have, under § 1, c. 250 of the Public Laws of 1864, obtained a decree of the Probate Court to compromise claims between the estate of the testate and its debtor in a certain manner, an adjustment by either of the executors, in compliance with the decree, will bind the other.

ON REPORT.

ASSUMPSIT by the executors of the last will and testament of the late Nathaniel Gilman, upon a written memorandum of the following tenor:—     "Waterville, Aug. 17, 1855. · "Received of Nathaniel Gilman, nine hundred dollars, payable on demand with interest."

          (Signed,)               " W. H. Healy."

On the memorandum were the following indorsements:— "Jan. 18, 1862, received $100; May 12, received $300; Aug. 22, received $426."

Defendant read in evidence a paper of the following tenor:

"Received of Wm. H. Healy twelve hundred and seventy-five dollars and fifty-six cents, in full discharge, award and satisfaction of two notes of hand now in suit against him, in the name of Charles B. Gilman and Anna K. Gilman, ex'rs on the estate of Nathaniel Gilman, late of Waterville, deceased, one note dated Nov. 1, 1855, for $1,945,38, given by said Healy to N. Gilman & Son, the other dated Aug. 17, 1855, for $900, given by said Healy to said N. . Gilman, each note having been in part paid by said Healy, said sum being the amount due on said notes after allowing said Healy certain sums claimed by him as payments on said notes, by way of settlement and compromise, in accord-ance with a decree of the Probate Court for Kennebec county, authorizing such settlement and compromise of said notes and claims.

          " Chas. B. Gilman, *Ex'r on the estate of*
                    *Nathaniel Gilman, deceased.*
     " *Witness,* Rob't B. Woodward."

Gilman *v.* Healy.

Defendant also read from the probate records of the county of Kennebec as follows : —

" To H. K. Baker, *Judge of Probate for Kennebec county* :

" We have a suit against Wm. H. Healy, on a note given by him to N. Gilman & Son, for $1,945,38, dated Nov. 1, 1855, and also a note given by said Healy to N. Gilman, deceased, for $900, dated August 17, 1855, and said Healy defends said suit and claims to have a defence to said notes, but, for the purpose of a settlement and by way of compromise, said Healy offers to pay the balance on said notes, deducting from the note in favor of N. Gilman & Son, as of its date, the sum of $500, claimed as paid by him, and from the note to N. Gilman, $318, claimed as a payment by him, computing the interest on the balance annually, and said Healy to pay one-third of the costs of suit. And we ask the authority of the Court to compromise said suit as above. " Joseph Baker, *Att'y for Ex'rs of*

*N. Gilman's estate.*

" *Augusta,* —— 13, 1867."

" Kennebec county. — *In Probate Court, held at Augusta, on the second Monday of May,* 1867.

" On the foregoing petition,

" *Ordered,* — That the said executors have authority to compromise the claims of said estate against Wm. H. Healy, as requested therein. " H. K. Baker, *Judge.*"

J. Baker, *Att'y for the plaintiffs,* testified : — This petition is in the handwriting of Mr. Libbey, signed by me, as it appears, as attorney for the executors of Nathaniel Gilman, deceased. My present impression is, I had no communication with Charles B. Gilman in relation to this compromise, but of that I am not certain. I took the statement from Mr. Libbey ; he and I had an understanding that such was the arrangement. I had no authority from Anna K. Gilman to act in relation to the compromise in any way, and, when it came to her knowledge, she repudiated the whole thing. She did not assent, but objected to it. I mean to say I had no authority from her to originate this proceeding

in the Probate Court.   The first communication I had with her was after I understood that the matter had been settled, and she then refused to give her assent to the settlement.

*A. Libbey, Att'y for the defendant,* testified :—I never had any communication with Charles B. Gilman in regard to the settlement of this estate.   Gen. Moor, who acted as counsel for the executors in the settlement of their matters, communicated to me the fact that an agreement had been made by the executors for the settlement of this action. My client also communicated the same information.   The latter part of April or the first of May, Anna K. Gilman sent a note to me, requesting me to meet her at the Augusta House, for consultation on some business.   I went there and met her.   We consulted first in regard to an equity suit by her mother against her and Charles, as executors. After we got through with that, I said to her that I understood an agreement had been entered into for a settlement with Mr. Healy.   She said there had been negotiations between Mr. Healy, Gen. Moor and Charles, and that one time she assented to it, but on reflection she did not feel quite satisfied to have it settled by the allowance of $318 on the $900 note, which Mr. Healy alleged was in the hands of her father, coming from her grandmother's estate to him, and which her father, Nathaniel Gilman, had agreed, as Healy alleged, to allow on the $900 note.   She said there were several grandchildren who would claim the same sum if they allowed that to Healy on that ground, and that was the objection she had to the settlement.   I said to her, if that was her objection, I thought it could be obviated by allowing it to Mr. Healy as a payment on the $900 note, without its appearing from what source it came.   Then she said her counsel in New York had said to her that there might be another objection ; it was doubtful whether they, as executors, had authority to compromise a suit by allowing sums in payment which were not really payments, and it might interfere with the settlement of the estate in New York.   I told her we had a statute authorizing Probate Courts

to pass decrees authorizing a compromise and settlement of controverted claims, and that a petition might be made to the Court, and the decree of the Court would be full authority for the executors to settle. She stated, if that could be done and done so that it would not appear that the $318 came from her grandmother's estate, she would assent to it, and that the petition might be made to the Probate Court for that purpose. She stated that Mr. Baker was her attorney, and that he could sign it. That was all, in substance, that passed between us in regard to the settlement of the action. I mentioned to Mr. Baker the fact, and, at his suggestion, I drew up the petition and he signed it, relying, I suppose, upon the statement I made to him. When I next saw Miss Gilman, which I think was in July, she informed me she had changed her mind and would not assent to that settlement.

By agreement of parties, the case was withdrawn from the jury and submitted to the full Court, upon so much of the foregoing evidence as is competent and admissible, the Court to render such judgment as the legal rights of the parties may require.

*J. Baker*, for the plaintiffs.

1. One of two joint executors, who have given one joint bond and are therefore each liable *per my et per tout*, cannot compromise for less than the face a debt due the estate, and allow disputed offsets and give a valid discharge, without the consent and against the protestations of the other.

2. Probate Court granted a power to the two plaintiffs jointly, *pendente lite*, to compromise the suit. It was a *trust* conferred upon two, relying upon their united judgment. One cannot execute the joint trust when the other refuses.

3. The discharge is not under seal, and it was not given for any new consideration. *Lunt* v. *Stevens*, 24 Maine, 532.

4. The discharge is not admissible under the general issue, but is matter in defence, arising "*puis darrein continuance.*"

*Rowell* v. *Hayden,* 40 Maine, 582; *Fiske* v. *Holmes,* 41 Maine, 441–5; *McKeen* v. *Parker,* 51 Maine, 389.

*A. Libbey,* for the defendant.

Appleton, C. J. — The plaintiffs sue as executors of the last will and testament of Nathaniel Gilman. After this suit was commenced, they were authorized by the Judge of Probate for this county to compromise the claims of the defendant against the estate of said Gilman.

The Judge of Probate, in authorizing the executors to compromise, acted under the provisions of the Act approved March 22, 1864, c. 250, § 1, which is in these words:—
"Probate Courts may authorize executors, guardians and trustees to adjust by arbitration or compromise, any claims for money or property, in favor of or against the estates by them represented."

After authority thus given, one of the executors compromised the claims in controversy and gave the defendant a discharge in full without the assent of his co-executrix.

The question presented is whether one co-executor can give a discharge without such assent. The case is submitted upon the evidence, so far as the same is admissible and competent.

By the common law, "co-executors, however numerous, are regarded in law as an individual person, and, by consequence, the acts of any one of them, in respect of the administration of the effects, are deemed to be the acts of all; for they have all a joint and entire authority over the whole property. Hence a release of a debt by one of several executors is valid, and shall bind the rest." 2 Williams on Executors, 620. An act by one is deemed the act of all, hence one of several executors may release the liability of a witness. *Shaw* v. *Berry,* 35 Maine, 279.

It is obvious, therefore, that either executor might have given a valid discharge of the claims in suit. The statute, c. 350, § 1, only authorizes that to be done under the sanction of the Court, which could have been done before its

passage, without such sanction. It protects the executors when acting under the authority of the Judge of Probate. It in no way limits or restricts the powers of the executors or either of them. As either might give a discharge without applying to the Probate Court, so either can do it after such application and leave granted.

The object of the Act referred to was to enable executors and administrators, by obtaining previous authority from the Judge, to compromise with debtors with perfect safety and without being subjected to expense in sustaining their acts. *Wyman's Appeal*, 13 N. H., 18.

It is well settled that, when several plaintiffs must join in a personal action, a release of one joint plaintiff is a bar to the suit. *Hall* v. *Gray*, 54 Maine, 231.

The point is taken that a proper plea has not been filed. But of that we cannot judge, as the pleadings have not been furnished us. The case is before us "to render such judgment as the legal rights of the parties may require." The defence is an equitable one. It is not alleged that there was unfairness in the compromise. If there were any formal error in the pleadings, which is not shown to be the case, the Court would have authority to allow an amendment, if necessary for the purposes of justice, or even to allow a new plea to be filed. *Rowell* v. *Hayden*, 41 Maine, 582. *Judgment for defendant.*

CUTTING, WALTON DICKERSON, DANFORTH and TAPLEY, JJ., concurred.