CHARLES E. MARKS ET ALS. APPEAL FROM PROBATE (ESTATE OF CHARLES A. MARKS).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 13th—decided December 27th, 1932.

*Joseph L. Melvin,* for the appellants (Charles E. Marks *et als.*).

*Leslie N. Davis,* for the appellee (executrix of the estate of Charles A. Marks).

HINMAN, J.   About May 24th, 1927, Charles A. Marks, a resident of Norwalk, died leaving a will and codicil bequeathing to each of his five children an undivided one-fifth interest in the residuary estate, and appointing his sons Charles E. Marks and Amasa A. Marks, and his daughter Lucy Marks Morrison, executors.   Formerly the decedent and his brother, George Marks, were co-owners of a tract of land of about one hundred and ninety acres situated in Greenwich and Stamford, which they sold, in October, 1926, to Fred Berg, taking a first mortgage for $155,000 to secure payment of part of the purchase price.   The premises were sold by Berg to Laddin Rock Park, Inc., about May, 1927, subject to this mortgage, and the corporation gave to Berg a second mortgage of $110,000, of which $100,000 is unpaid.   At the time of his death Charles A. Marks was the owner of a one-half interest in the note and mortgage of Berg to him and George Marks, which was payable on October 29th, 1931.   The remaining one-half interest is still owned by George Marks.   Prior to May 1st, 1931, all of the claims which had been presented against the estate of the decedent had been paid, all specific bequests and devises satisfied, the expenses of administration paid or provided for, and the decedent's one-half interest in the note and mortgage was still intact as a part of the residuary estate.

About May 28th, 1931, Mr. Mygatt, president of Laddin Rock Park, Inc., informed Charles and Amasa Marks, two of the executors, that the corporation was unwilling to continue to pay the carrying charges including taxes, upkeep, and interest on both mortgages unless the first mortgage could be extended for a definite time, and was desirous of obtaining an extension for five years from October 29th, 1931, the due date. In order to get such extension, it was willing to increase

the interest rate from five per cent to six per cent a year and leave in effect the thirty-day acceleration clause for nonpayment of interest, taxes, or insurance. He further told them that unless some agreement for extension were made, the corporation would abandon the property. They conducted an investigation to determine the advisability of making such an extension agreement, negotiated with Mygatt and with Berg, the owner of the second mortgage, and submitted several counter-propositions to Mygatt endeavoring to get him to pay a bonus for extending the mortgage, to pay off something on the principal, or to consent to an extension for a shorter period; they also endeavored to persuade him to postpone any action regarding the extension until they could file their account and effect a distribution, thus leaving him free to deal with each of the heirs individually. Mygatt refused to consider any of these propositions except to change the time from five years to three years. They made inquiry as to the cost of carrying the premises and were informed that the annual charges for labor, mortgage interest, insurance, and taxes exceeded by about $18,000 the annual income received from the property. Laddin Rock Park, Inc., the owner of the premises, was financially unable to pay the mortgage note or even to pay the carrying charges except as it received advancements from one of its principal stockholders who, Mygatt informed the executors, was willing to continue to advance sufficient funds to pay carrying charges and interest on the mortgage during the extended term, provided he could be sure that he would not be required to pay any part of the principal. Berg, the maker of the mortgage note, was unable to pay it.

The mortgaged tract has a potential value, in times of normal prosperity, for building lots and business enterprises, but at all times during the negotiations for

the extension there was no active market for such lots or business sites or for the tract as a whole. The value of the premises at the time, based on a cash sale payable within sixty or ninety days, was from $110,000 to $149,000. There was no ready market for a one-half interest in a mortgage of that size, and it could not have been sold except at a discount of twenty per cent or more.

Charles and Amasa Marks also consulted an attorney and were advised that in his opinion they had authority to sign an extension agreement on behalf of the estate. In June, 1931, an agreement was executed by Laddin Rock Park, Inc., Berg, the second mortgagee, George Marks, owner of the remaining one-half interest, and by Charles and Amasa Marks, a majority of the executors of the decedent, purporting to extend the time for the payment of the principal until October 29th, 1934, and containing the usual acceleration clause. Mrs. Morrison, the third executor, did not consent to the extension agreement or execute the same as one of the executors, and the two executors who signed were aware that she was opposed to the extension. No advice or authorization from the Court of Probate was asked before the agreement was signed.

The Superior Court finds that in entering into the agreement the two executors acted in good faith and in the honest belief that it was for the best financial interest of the estate as a whole and in the belief that the facts developed by their investigation, which was honest and reasonably thorough, were true, and their action represented the exercise of an honest discretion on their part.

About two months after the signing of the agreement a hearing was held in the Court of Probate on the acceptance of the final account of the executors in which they asked a credit for $77,500, being one half of

the principal of the mortgage note, and annexed to the account a note setting forth briefly the facts regarding the execution of the agreement. The Court of Probate accepted the account in its entirety except that it "disallowed the attempt of the executors to enter into an agreement for the extension of the time for the payment of the so-called Fred Berg mortgage for a period of three years from October 29th, 1931." Subsequently distributors effected a distribution of substantially all of the assets of the estate and each of the legatees is now the owner of an undivided one-tenth interest in the note and mortgage.

The appeal from probate related only to the action of the court in disallowing the extension agreement in connection with its acceptance of the final account. The nature and purpose of final accounts of executors or administrators and the function and effect of acceptance or disallowance thereof or of items therein by the Court of Probate are considerations materially affecting the action appealed from. The purpose of such an account is to inform the court and all interested as to the condition of the estate. To that end it properly consists of a statement of the assets and other items with which the fiduciary is chargeable, the expenditures and other credits, and a showing of the balance of the estate undisposed of and remaining for distribution. The only effect of acceptance of the account which is of moment in the present inquiry is to determine the items and amounts with which the fiduciary is chargeable, those to which he is entitled to credit, and fix the balance for which he is answerable and his liability therefor. *Mallory's Appeal*, 62 Conn. 218, 221, 223, 25 Atl. 109; *Hutchinson's Appeal*, 34 Conn. 300, 303; *Fairman's Appeal*, 30 Conn. 205; *Sellew's Appeal*, 36 Conn. 186, 193; Cleaveland, Hewitt & Clark, Connecticut Probate

Law & Practice, p. 353. The limits of the scope of acceptance are indicated in *Mallory's Appeal, supra,* where it is observed that if the account credited the executor with a claim stated to be uncollectible, acceptance by the Court of Probate would be merely a justification to the executor for his failure to realize the amount for the benefit of the estate. "It would be operative and conclusive to this extent, but no further" (p. 221). Omission from a final account of a claimed indebtedness to the decedent as an asset of the estate is a proper matter for consideration in connection with the acceptance of the account. *Mulcahy* v. *Mulcahy,* 84 Conn. 659, 81 Atl. 242.

When the Court of Probate allowed the executors full credit for the mortgage item, without diminution on account of the extension agreement, it exhausted the proper functions of action on the account with reference to that asset item. The only apparent relevancy and utility of the explanatory reference in the account to the extension agreement was for such effect as its existence might have upon the amount to be allowed the executors as a credit for the mortgage interest as an asset on hand. The presentation of the account is not reasonably to be construed as seeking approval of the agreement, and the acceptance of the account afforded no proper occasion for disapproval by the court of its own motion, except that it might, by appropriate reservation, exclude any inference of approval of the agreement which conceivably might be drawn from the acceptance of the account. This is as far as the court could properly go consistently with having allowed full credit for the mortgage interest. If the intended effect of the provision of the decree appealed from were to deprive the executors who entered into the agreement of power and authority to do so, with the consequences attendant upon lack of

authority, the considerations already mentioned are sufficient to render it erroneous. However, we discuss some of the other contentions involved in the record.

No additions to or eliminations from the finding which would materially affect the conclusions reached from the facts found, including those above stated, could be allowed in view of the evidence and legitimate inferences therefrom.

Most of the conclusions appear to be predicated upon an assumption that authorization by order of the Court of Probate was essential to an extension of the time for payment of the mortgage debt. One of these is to the effect that the extension was tantamount to an engaging in the business of the decedent. This would require authorization by the Court of Probate as provided by § 4960 of the General Statutes and could be authorized only as a continuance of an existing business "so far as may be expedient for the prudent winding up of the same, if the court shall find it will be for the interest of the estate." A further conclusion is that this authority could not have been conferred by the court—presumably because not within the limitations just stated. That the extension did not constitute either a continuance of any business of the decedent or an engaging in business by the executors appears to require no discussion further than to suggest that a foreclosure of the mortgage, which the situation depicted by the finding indicates would have been an unavoidable or at least a probable consequence of refusal to make the extension agreement, would be most likely to result in precipitating the executors into the business of managing a real estate development.

The only other statute which is claimed to have any application is § 4939, which provides that the court may authorize fiduciaries "to compromise and settle

any doubtful or disputed claims or actions." This transaction clearly is not within the scope of that statute. Moreover, executors and administrators do not lack power to make such compromises without court authority but may do so at the risk of being charged with any loss involved. The purpose of the statute is to enable them to obviate this contingency by obtaining approval in advance. *Johnson's Appeal,* 71 Conn. 590, 595, 42 Atl. 662; *Gilman* v. *Healy,* 55 Me. 120, 124; *Wyman's Appeal,* 13 N. H. 18; Cleaveland, Hewitt & Clark, *supra,* p. 282. If it applied to the present situation the advance authority would have served no useful purpose in view of the allowance, without it, of full credit on account of the debt.

Coming to the implied powers of Courts of Probate, we cannot see that an exclusive function to authorize extension of time for payment of a debt due to and an asset of an estate is so necessary in the discharge of duties imposed upon such courts as to bring it among their incidental powers beyond the scope of those expressly confided. *Hall* v. *Meriden Trust & Safe Deposit Co.,* 103 Conn. 226, 230, 130 Atl. 157. In *Kane* v. *Kane,* 107 Conn. 716, 723, 142 Atl. 466, it appears that a petition that the Court of Probate adjudge that an option by will to purchase stock had expired and order an executor to desist from attempts to transfer the stock was dismissed for lack of jurisdiction. The extension here involved does not appear to be essentially dissimilar in nature.

Conclusions questioned by the appeal include those to the effect that the executors had no authority to bind a nonassenting legatee by the extension agreement, and postpone, for the extended time, her right to collect her share of the mortgage debt; also that the majority of the executors did not have authority to sign the agreement either by virtue of their office or

under the express terms of the will. The latter we construe as meaning that even if all the three executors could make the agreement, two could not. The considerations presented by these conclusions would be relevant and material only to the validity and enforceability of the agreement itself, and it is conceded correctly that this issue is not and could not be adjudicated by the decree or on the appeal therefrom. *Mallory's Appeal, supra.* Therefore, determination of the points involved in the attack upon these conclusions is outside of the proper scope of the present inquiry. None of the other conclusions which are sustainable upon the facts would suffice to justify the provision of the decree which was appealed from.

There is error and the case is remanded to the Superior Court with direction to sustain the appeal.

In this opinion the other judges concurred.