L. Reed Phillips *v.* Herbert L. Moeller, Jr., et al., Trustees (Estate of Constand A. Moeller), et al.

Baldwin, C. J., King, Murphy, Mellitz and Shea, Js.

362

Argued March 21—decided May 2, 1961

*David D. Berdon*, with whom was *Robert I. Berdon*, for the appellant (plaintiff).

*George W. Crawford*, for the appellees (defendants).

MELLITZ, J. Constand A. Moeller died on June 1, 1914, a resident of New Haven, and under his will, filed in the Probate Court for the district of New Haven, a trust was created which provided for the distribution of the trust estate among his grandchildren, per capita, upon the death of the last survivor of his children.[1]  Four trustees, all now

---

[1] "(2) I give, devise and bequeath to Ernst Frederick Moeller, Herbert L. Moeller, Moses Rogers and Richard F. Jahm all of New Haven, all the rest and residue and remainder of my property,

deceased, were named, of whom one was a son, one a son-in-law, one a brother, and one a nephew, of the testator. See *Stevenson* v. *Moeller,* 112 Conn. 491, 493, 152 A. 889. In 1940, three of the testator's grandsons became successor trustees, and in 1947, a fourth grandson was appointed a successor trustee. The four have functioned continuously as trustees since their respective appointments. All are annuitants under the trust. In 1958, the plaintiff, L. Reed Phillips, presented to the Probate Court an application for the removal of two of the trustees, the defendants Herbert L. Moeller, Jr., and Rudolph L. Kautz, Jr., and for the appointment of himself as a trustee. Phillips is also a grandson of the testator and an annuitant under the trust. The application was based on what is now General Statutes § 45-263 and charged that Moeller and Kautz had become incapable of executing their trust in that they had placed themselves in a position of

both real and personal, as trustees, to hold the same upon the following trust, with power to sell all my real and personal property (except my stock in The Narragansett Brewing Company of Providence, Rhode Island, which I direct shall neither be sold nor exchanged) and to invest and re-invest the avails thereof for the purposes of this trust; all surplus income and all avails of sales of personal property or real property shall be invested in mortgages on improved real estate in the New England States, the same to be double security for the amount loaned, and interest to be paid semi annually in cash and insurance and all taxes to be paid by the mortgagor; to pay to each of my children, Emma Lines, Augusta J. English, Constantina A. Rogers, Laura C. Kautz, Ida E. Konold, Constant R. Moeller, Lily E. Moeller, Herbert L. Moeller, all of said New Haven and Clara T. Johnston, now residing in Germany, the sum of twenty-five hundred ($2,500) dollars during the first year after my decease, twenty-six hundred ($2,600) dollars during the second year after my decease, and thereafter such annual payment to each of them is to be increased by one hundred ($100) dollars per annum until the annual income of each shall reach the sum of four thousand ($4,000) dollars per annum, beyond which amount their annual payments are not to be increased; said income is to be paid to each one of said children

conflict of interests, had neglected to perform the duties of their trust, and had performed trust duties in such a manner as to promote their own personal profit. The application was denied by the Probate Court. An appeal was taken to the Superior Court, and from a judgment dismissing that appeal Phillips has appealed to us.

The facts found, with such corrections as are warranted, are, so far as pertinent to a consideration of the questions presented, as follows: At the time of the death of the testator, he was the distributor in Connecticut for Narragansett beer. During the settlement of his estate, the Probate Court, pursuant to what is now § 45-256 of the General Statutes, ordered the continued operation of this distributorship by the temporary administrator, the executors, and the trustees, in succession, for the purpose of the prudent winding up of the estate. This order

as long as any one of them survives; in other words, the incomes as above directed, not exceeding four thousand ($4,000) dollars a year, are to be paid to each of my said children up to the death of the last survivor, but none of the survivors is to receive more than is above directed; said incomes above provided are to be paid to each of said legatees in equal monthly installments.

"(3) Upon the death of any of said children, leaving issue surviving them at the time of my decease, or at any time before the death of the last survivor of my said children the annual payments hereinbefore provided for such child or children shall be paid to their children during their lifetime, share and share alike, or to the issue of such children, until the death of the last survivor of my said children.

"(4) Upon the death of the last survivor of my said children I give, devise and bequeath all the rest and residue of my estate to my grandchildren, to take per capita and not per stirpes.

"(5) If any of my grandchildren shall have died previous to the time of the division above directed, I direct that the share of such grandchild shall be divided equally among the children of such grandchild, if he or she leaves any, but in default of such children the share of such deceased grandchild shall be divided equally among the surviving grandchildren taking per capita and not per stirpes."

continued until the eighteenth amendment to the federal constitution became operative in 1920. After the repeal of that amendment on December 5, 1933, the trustees did not seek permission from the Probate Court to acquire the distributorship again. A person who had no connection with the estate secured the distributorship for the area. It was later sold to a firm which operated it until 1947, and then it was sold to a partnership comprised of Moeller, Kautz and another. As early as 1947, Phillips was employed by the partnership and had actual knowledge of the interests in, and ownership of, the distributorship. In 1956, the distributorship was transferred to a Connecticut corporation, Narragansett Sales Company, Inc., of which Moeller and Kautz were the incorporators, officers and directors, and in which they owned substantially all of the capital stock.

The trust estate owns 20 per cent of the capital stock of the Narragansett Brewing Company and also a number of parcels of real estate and mortgages on real property. Moeller is a director of the brewing company, representing the stock interest held therein by the trust estate. He owns no stock, personally, in the brewing company. Between 1950 and 1957, the brewing company paid dividends in stock instead of in cash as theretofore. Certain beneficiaries of the trust estate were opposed to the continuation of stock dividends and so informed Moeller and Kautz. Thereafter, at directors' meetings and at stockholders' meetings of the brewing company, these trustees opposed the continuance of the company policy of paying dividends in stock. In 1957, at the request of all the trustees, a special meeting of the directors of the brewing company was held at which the trustees

appeared with counsel and remonstrated against the continuation of the company's dividend policy, but without success. Efforts of the trustees on other occasions to persuade the company to change its policy were fruitless. The accumulation of stock dividends was substantially more beneficial to the estate, because such dividends were not subject to income tax. Since 1940, the book value of the trust estate has grown from $1,823,220 to $2,400,892, reflecting the prudent administration of the estate by the trustees. The market value is approximately $5,000,000.

Annual accounts as required by § 45-268 of the General Statutes were filed by the trustees in the Probate Court and were accepted and allowed, after due notice and hearing, without objection by any beneficiary until Phillips filed an objection in 1957. From and after 1940, he had notice of the hearings in the Probate Court on the annual accounts by means of public notices published pursuant to § 45-269 in the New Haven newspapers; and from 1953 to 1957 he also received personal notice of the hearings.

During the trial, Phillips attacked the retirement allowances which had been made to two employees of the trustees. One was a son of the testator who had been employed by the latter prior to 1914 and had been continued on the same job by the trustees until he became infirm and was retired on $30 a week. The duties he performed before his disability were substantially those he had performed for his father during the latter's lifetime. The other was an employee who had worked for the estate for forty-two years, beginning in 1914, as secretary, bookkeeper and general office manager, and who was granted a retirement allowance at half salary

for approximately two years until she reached the age for social security benefits. The retirement allowances paid to these employees were listed in the annual accounts filed by the trustees under the expense item of "Office Salaries." Phillips also attacked the method of reporting and accounting for rents collected by Rudolph Kautz, Sr., father of the defendant Kautz and a son-in-law of the testator. Kautz, Sr., following the procedure he used in the testator's lifetime, made monthly reports to the trustees of the full amounts of the rents collected and showed therein deductions of expenditures made by him, and also his commission of 3 per cent. He then remitted with his monthly report a check for the net amount. The trustees in turn reported this net amount in their annual accounts. The detailed information concerning these collections was recorded in the books of the estate, to which those beneficially interested in it had full access. The custom of accounting for rents in this manner was followed by both the predecessor trustees and the present trustees from 1940 to 1957 without objection. Since April 30, 1958, the rents formerly collected by Kautz, Sr., have been collected at the office of the estate.

There are forty-one living beneficiaries or potential beneficiaries of the trust, and none besides Phillips appeared in either the Probate Court or the Superior Court in support of the application to remove the defendant trustees. On the other hand, several beneficiaries and potential distributees appeared in the Probate Court and the Superior Court, by permission of the court and with the consent of Phillips' counsel, to oppose the application.

In the Superior Court, and in brief and argument, the specific acts charged as the basis for the grounds

of removal were that Moeller and Kautz violated the terms of the trust requiring double security for loans made by it; that they failed to account properly concerning the operations of the trust when they did not show the commissions paid to Kautz, Sr., for rent collections, and the payment of retirement benefits to the two employees; and that they placed themselves in a position of conflict of interests by acquiring for themselves, instead of for the trust, the distributorship for Narragansett beer, thereby rendering themselves unable properly to serve the interests of the trust in dealings with certain of its tenants and mortgage debtors and with the Narragansett Brewing Company. The failure to prevent the payment of dividends of the brewing company in stock rather than in cash, between 1950 and 1957, was particularly pointed out.

The issue presented in the Superior Court was whether the Probate Court erred in denying the application for the removal of Moeller and Kautz as trustees. Whether there was adequate ground for their removal was a question addressed to the sound discretion of the Probate Court, and its conclusion could not be disturbed on appeal unless that discretion was abused. *Peck* v. *Searle,* 117 Conn. 573, 584, 169 A. 602; *Carroll* v. *Arnold,* 107 Conn. 535, 542, 141 A. 657; *Murdoch* v. *Elliot,* 77 Conn. 247, 256, 58 A. 718.

Whether, on the facts established, the action of the Probate Court was proper may be tested in the light of the following quotation from 1 Perry, Trusts and Trustees (7th Ed.) p. 493, which presents pertinent considerations notwithstanding that the present trustees, grandsons of the testator, are successor trustees, having been appointed to succeed the original trustees named by the testator,

they having died. "In no case ought the trustee to be removed where there is no danger of a breach of trust, and some of the beneficiaries are satisfied with the management. Nor will a trustee be removed for every violation of duty, or even breach of trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy." See *Murdoch* v. *Elliot,* supra. It is the duty of a trustee to exercise due diligence in view of the circumstances surrounding the administration of the trust; *Lyman* v. *Stevens,* 123 Conn. 591, 596, 197 A. 313; and he must do what ordinary prudence requires in the circumstances. *McClure* v. *Middletown Trust Co.,* 95 Conn. 148, 153, 110 A. 838. "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of . . . third persons." 3 Bogert, Trusts and Trustees § 543; *Conway* v. *Emeny,* 139 Conn. 612, 621, 96 A.2d 221; *Lyman* v. *Stevens,* supra. He must not put himself in a position where self interest may conflict with his duties as trustee. *Lyman* v. *Stevens,* supra; *State ex rel. Johnson* v. *Atchison,* 105 Conn. 315, 322, 135 A. 456; *Meinhard* v. *Salmon,* 249 N.Y. 458, 464, 164 N.E. 545; Restatement (Second), 1 Trusts § 170; 2 Scott, Trusts (2d Ed.) § 170; 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1077.

During the trial, Phillips, by his attorney, con-

ceded his position to be that the defendant trustees had committed no fraud and that there was no deliberate attempt on their part to resort to deceitful methods to hide their dealings in such a way as to commit fraud upon the beneficiaries; but that they were in a position to do wrong, this position made them guilty of a constructive fraud, they had created a conflict of interests, and their accountings were misleading and inaccurate. In response to questions by the court designed to have Phillips more specifically define his claim that Moeller had been derelict or otherwise failed to do his duty as trustee in respect to the stock dividend policy of the Narragansett Brewing Company, counsel for Phillips made the statement: "I will not show, and I do not profess that I will be able to show that this man was derelict in his duty. I will show that this was the situation and that he was in a position where he might not have been able to adequately represent the estate because of this conflict of interest. . . . I do not ask the Court to draw the inference that this man failed to do something that he should have done."

To support the charge that the defendant trustees violated the "double security" requirements of the trust, Phillips calls attention to a purchase money mortgage of $21,060 taken by the trustees as security for the balance of the purchase price of property sold by them in 1957 for $23,400. The property had been acquired by foreclosure of an earlier mortgage in which the total investment of the trust, including the expenses of the foreclosure, was less than $11,000. The court properly found that the purchase money mortgage, taken as part of the financing of the resale of the property, was not in violation of the provisions of the will.

As to the failure of the trustees' annual accounts to disclose, as distinct items, the payment of the retirement allowances to two employees and the commissions to Kautz, Sr., for rent collections, it would have been better to have made specific reference to these items in the accounts, but the failure to do so warrants no conclusion that the omission rendered the accounts so misleading and inaccurate as to constitute a ground for removal. A trustee is under a duty to keep clear and accurate accounts, and in his reports he should show what he has received and expended, and in general such data as will keep beneficiaries informed concerning the management of the trust. 2 Perry, Trusts (7th Ed.) § 821; 2 Scott, Trusts (2d Ed.) § 172. Phillips makes no claim that the defendant trustees deliberately endeavored to conceal information from the beneficiaries or to mislead them. There was no evidence, considering all the circumstances, including the duration and nature of the services rendered by the employees involved and the size and scope of the operations of the trust, that the retirement allowances were not in accord with usual and reasonable business practices prevailing in New Haven during the period in question. The method employed in reporting the rents which Kautz, Sr., collected, by showing the net amount received from him, instead of the gross amount collected and the amount deducted by him for minor expenditures and his commission of 3 per cent, was the practice followed, without objection, from 1914 to 1957. The going rate for rent collections of this character was 5 per cent. The estate discontinued the payment of commissions to Kautz, Sr., on April 30, 1958, and the rents are now collected at the office of the estate.

The principal ground on which Phillips urges the

removal of the two trustees is the claimed conflict of interests arising from their acquisition of the Narragansett beer distributorship. He calls attention to the duty imposed on a trustee to administer the trust solely in the interest of the beneficiaries, and not to occupy a position in which there is or may arise a conflict between his personal interest and his duty to the trust. The established facts do not support the charge of a violation of this principle by the defendant trustees. With relation to the claim that they were under a duty to acquire the distributorship for the trust estate, the trustees did not have authority under the will to invest the funds of the trust in such an enterprise. Nor did § 45-256, relating to the continued operation of a business for the prudent winding up of an estate—the statute under which the distributorship was originally operated by the estate—furnish authority for an order enabling the trustees to operate the distributorship again. *Marks' Appeal,* 116 Conn. 58, 65, 163 A. 600. The effort to establish that dealings of the trust with tenants and mortgagors reflected an impairment in the capacity of the defendant trustees to serve properly the interest of the trust was equally unsuccessful. Phillips produced as witnesses a number of tenants who occupied properties owned by the trust estate, are engaged in the beer business, and sell Narragansett as well as other brands of beer. None of these tenants had received any concession in rents, or otherwise, as an inducement to buy Narragansett beer from the Narragansett Sales Company. Phillips also produced as witnesses a number of persons engaged in the beer business and on whose properties the trust estate held mortgages. All of the mortgages were at the going rate of interest and were current as to principal and interest

payments. Finally, with relation to the payment by the Narragansett Brewing Company of dividends in stock instead of in cash, the findings, supported by substantial evidence, are that the defendant trustees opposed the company's policy and exerted efforts to persuade the company to change it, but without success.

The conclusions of the court that the defendant trustees performed their duties in a manner consonant with the best interests of the trust and that they did not put themselves in a position of conflict between their own interests and their duties to the trust estate are thoroughly supported by the established facts. Phillips, as already noted, expressly disclaimed any charge of fraud or dereliction of duty on the part of these trustees. These concessions, coupled with the record of efficient and prudent administration of the trust extending over a long period of years during which the trust estate increased to several times its original value, lend no support to the charge that the proper and efficient administration of the estate in the future will be imperiled by the continuation of Moeller and Kautz as trustees. The Superior Court was fully warranted in concluding that the Probate Court did not abuse its discretion in denying the application for removal.

Error was assigned in a number of rulings on evidence. There was no harmful error in any of these rulings, and no discussion of them is required.

There is no error.

In this opinion the other judges concurred.