[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above two cases were consolidated by a January 8, 2002, order of CT Page 10414 the court (Sheedy, J.). They were assigned for trial as court cases before the undersigned along with another unconsolidated case (docket no. CV98 0353824, Gordon C. Andrews, Executor of the Will of John StarkGorby v. John Thomas Gorby), involving the same parties and which this court has before it for decision. Docket number CV98 0353824 concerns the fee dispute made reference to in these cases. The court herein will only consider the status of that case as of the respective dates the trustees were removed in these cases.
Trial of these cases started and concluded on July 8, 2002. The court has reviewed the respective briefs of the parties and will quote liberally from them.
Each of the consolidated cases is an appeal from probate decrees entered September 18, 2000, and September 27, 2001, removing the plaintiff as a trustee of an inter vivos trust and a testamentary trust respectively. Each decree having been issued without a hearing of which a record was made, these appeals are trials de novo. Andrews v. Gorby,237 Conn. 12, 16 (1996). In an appeal from probate the Superior Court sits as a probate court and is subject to the probate court's jurisdictional limits. Gardner v. Balboni, 218 Conn. 220, 225 (1991). The Superior Court may not consider events transpiring after September 13, 2000, in the first case; or after September 27, 2001, in the second case, although it may receive evidence that could have been offered in the Fairfield Probate Court before those dates whether or not it actually was offered. Gardner v. Balboni, supra, 225. "After consideration of all the evidence which would have been admissible in the probate court, the Superior Court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court."Prince v. Sheffield, 158 Conn. 286, 298 (1969)
For purposes of simplicity, the court will refer to Gordon C. Andrews, the trustee of the trusts, as the plaintiff and one of the beneficiaries of the estate, John Thomas Gorby, as the defendant. Some considerable historical background of this matter must be recited to understand the context in which the rather limited issue presented to the court is to be decided.
The decedent, John Stark Gorby, was a resident of Greenwich and was survived by one son, the defendant herein, and six grandchildren, all the offspring of the defendant. The plaintiff for several years prior to the decedent's death in 1989 was his next door neighbor. The plaintiff is an attorney admitted to practice both in New York and in Connecticut. Although his practice has been involved mainly in corporate law, he did work for three years beginning in 1975 as an associate in a New York law CT Page 10415 firm where he was heavily involved in estate matters.
The plaintiff's first legal service for the decedent was in 1986 when he assisted the decedent in the probate of his wife's estate. He charged $1,000 for that service. Subsequently, he prepared a new will for the decedent, which was executed on February 3, 1987. In that will, the defendant was named as executor and the Union Trust Company as Trustee. Subsequently, a First Codicil was prepared by the plaintiff dated October 13, 1987, which among other things designated him as the executor and trustee under the will. There was testimony that originally the plaintiff did not want to assume those roles, but he in fact did. The defendant was named substitute executor and Union Trust substitute trustee. For the first time, it was provided that the fiduciary fees would be in accordance with the Union Trust fee schedules for estates and trusts. That fee schedule was never fully explained to the decedent.
Again, on October 8, 1988, a Second Codicil to the decedent's will was prepared by the plaintiff and executed wherein the plaintiff was again named executor and trustee but this time with a power to appoint his successors. The Union Trust fee schedule remained. On October 13, 1987, the plaintiff prepared and had executed an inter vivos trust for John Stark Gorby wherein he named himself as trustee. That trust was funded by Mr. Gorby's residence in Greenwich.
In 1989, the decedent died and the plaintiff was duly appointed as executor. Apparently, during the probate proceedings, the plaintiff utilized his services as attorney for the estate. In late 1992, the plaintiff submitted his accounting to the Probate Court in Fairfield, and as a part of that, sought an executor's fee of $28,064 and a separate attorney's fee of $28,064. Apparently, before including the claim for attorney's fees, the plaintiff inquired of Attorney William Phillips of Greenwich as to the legitimacy of such fees and was advised that it was appropriate under Connecticut practice. He intentionally did not utilize the Union Trust Fee Schedule for Estates as he felt it was "inequitable" because the assets listed for tax purposes only would be transferred to trusts wherein he, as trustee, would be compensated again. A fee based on that schedule would have been higher.
The defendant retained counsel who filed a petition on February 26, 1993, to disallow the fees, and a hearing was scheduled in the Probate Court. The defendant testified that he had had an earlier conversation with the plaintiff wherein he claims the plaintiff had estimated his fee for settling the decedent's estate at $3,000 and that was what now bothered him. The plaintiff had a different version of that conversation. He claims he told the defendant that he had charged the decedent $3,000 for the preparation of the will and eight inter vivos CT Page 10416 trusts and that he would charge the estate a reasonable fee for his services as executor. He never said he would also charge the estate a fee for legal services. The court finds that version of the conversation more reasonable.
Thereafter, the plaintiff amended his Affidavit of Estate closing to raise his fee as executor by $17,834 in accordance with the Union Trust schedule and hired Attorney William Phillips to assist him in achieving his higher fees. He gave as his reason for increasing his request for executor's fees the fact that as long as his fees were being challenged he should increase it in accord with the Codicil to raise the base point of his request. After hearing, the Probate Court awarded him $28,000 as an executor's fee and rejected in total his claim for attorney's fees because of his dual capacity. The defendant did not appeal from that decision, but the plaintiff did. In his appeal, the plaintiff sought the full executor's fee in excess of $45,000 and the attorney's fee of $28,064. That case was tried in the Superior Court before Levin, J., who basically reaffirmed the judgment of the Probate Court. The plaintiff appealed that decision to the Connecticut Appellate Court and thereafter the Connecticut Supreme Court assumed jurisdiction.
The Supreme Court, on May 14, 1996, reversed Judge Levin and remanded the case for a new trial. It decided three things. It found that Judge Levin gave deference to the finding of the Probate Court instead of conducting a trial de novo and making an independent determination of fees. It further ruled, on public policy grounds, that the bank fee schedule could not be used in an estate where the will preparer named himself as executor and put in the fee schedule and, finally, that in determining the reasonableness of attorney's fees for the estate, it was not necessary to present time records for that service.
On remand, the case was tried before the Honorable Milton Belinkie. After a full hearing, he awarded a total of $20,000 for combined executor's and attorney's fees and an additional specific award of attorney's fees in the amount of $5,000 for services before the Internal Revenue Service. That total of $25,000 for the plaintiff's services was obviously less than the $28,000 the Probate Court had initially awarded the plaintiff on May 4, 1993. The net effect of that litigation was that the Estate of John Stark Gorby was overcharged by the plaintiff in the amount of $48,898 for executor's and attorney's fees.
All during the initial proceeding before Judge Shannon in the Probate Court on the disallowance of fees, the trial before Judge Levin, the appeals to the Appellate and the Supreme Court and the retrial before Judge Belinkie, the plaintiff was represented by Attorney William Phillips. Those services were performed solely to increase the CT Page 10417 plaintiff's executor fees and to procure attorney fees for him. The effort was clearly unsuccessful. Attorney Phillips billed the plaintiff periodically and his total fee for the services previously mentioned was $25,000 in fees and $3,423.31 in disbursements. All of these fees and disbursements were paid by the plaintiff out of income from the estate. All of the fees charged to the defendant John Gorby by the law firm of Pullman Comley in defending the plaintiff's appeal were paid for personally by John Gorby.
Thereafter, the plaintiff filed an interim account dated February 9, 1998, for the period May 1, 1993, through December 31, 1997, in which he credited himself $25,000 in legal fees and $3,423.31 for costs associated with the legal fees. By document dated April 27, 1998, the Probate Court approved that accounting with the exception of the $25,000 for legal fees and $3,423.31 for costs associated with said fees, which it specifically disallowed.
The plaintiff also appealed that matter to the Superior Court, which matter is also pending before this court. If this court on a de novo basis also disallows these fees, then the plaintiff will be forced to repay the estate from his personal sources the full amount of $28,423.31 which he advanced from the estate. As the estate assets have been turned over to the testamentary trust, of which he was the original trustee before his removal, if he is restored as trustee he will be in the unique position of having to pursue himself for the return of those fees. His lack of enthusiasm for such a role requires no discussion.
The appeal from the order of the Probate Court dated September 18, 2000, hereinafter referred to as the 2000 appeal, is from the plaintiff's removal as trustee of the inter vivos trust created on October 13, 1987. That trust was funded by the transfer of the decedent's real estate in Greenwich. After the decedent's death, that real estate was improved and initially rented. In 1995 it was sold creating a fund of over one million dollars.
In his brief, the plaintiff in support of his stewardship argues that the trust's assets, notwithstanding numerous distributions, were increased from $675,000 in 1988 to $1,277,175.03 by September 18, 2000. That is simply not the case. The increase was totally generated by the sale of the property in 1995 at a figure much higher than its designated value established in 1988.
The appeal from the order of the Probate Court dated September 27, 2001, removing the plaintiff as trustee of the testamentary trust shall hereinafter be referred to as the 2001 case. Although the decedent died in 1989, that trust was not funded until an order of the Probate Court on CT Page 10418 May 23, 2001. The main asset of that trust was a securities account. The trust was never funded presumably because of the continuous and protracted litigation between the executor and the estate's beneficiaries first over the executor's and attorney's fees of the executor and later the fees of a private attorney retained by the executor to pursue his claim for a higher executor's fee and attorney's fees. The litigation has been ongoing for ten years.
Before proceeding further, the court will briefly discuss the law of the case. Both parties agree that the legislature has provided the only remedy for removal of a fiduciary and both agree that the statutory provision applies to both executors and trustees.
Statutory authority for removal of a fiduciary by a court of probate is found in General Statutes § 45a-242 which reads as follows:
 (a) Removal of fiduciary for cause. If any fiduciary becomes incapable of executing his trust, neglects to perform the duties of his trust, wastes the estate in his charge, or fails to furnish any additional or substitute probate bond ordered by the court, the court of probate having jurisdiction may, upon its own motion, or upon the application and complaint of any person interested or of the surety upon the fiduciary's bond, after notice and a hearing, remove such fiduciary.
Both sides then rely heavily on the leading cases of Phillips v.Moeller, 148 Conn. 361 (1961) and Ramsdell v. Union Trust Co., 202 Conn. 57
(1987), in support of their positions. Predictably, each party only quotes from those opinions the parts that are helpful to their causes.Phillips involved an appeal where the fiduciary was not removed and inRamsdell it was removed. The law of both cases is basically the same. The facts of each case are sufficiently distinguishable from this case to be of little value. Of interest, however, is that in Phillips the protesting beneficiary was only one of forty-one and many of the other beneficiaries were in opposition to the removal. In this case, although the main complaining beneficiary was the defendant, there is evidence that the other beneficiaries were in agreement.
In Phillips, supra, in citing 1 Perry, Trusts and Trustees (7th Ed.) P. 493, the Court stated:
"`In no case ought the trustee to be removed where there is no danger of a breach of trust, and some of the beneficiaries are satisfied with the management. Nor will a trustee be removed for every violation of duty, CT Page 10419 or even breach of trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will, ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save trust property. Mere error, or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy.' (emphasis supplied)"
The Phillips court went on to say further:
 "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest. . . . He must not put himself in a position where self-interest may conflict with his duties as trustee."
In Ramsdell the court observed:
 "Whether there was adequate ground for the removal was a question addressed to the sound discretion of the Probate Court. . . . On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision. "
That court went on to say:
"An important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the state. Corey v. Corey, 120 Minn. 304, 310, 139 N.W. 509 (1913); In re Estate of Rothko, 84 Misc.2d 830, 847-48, 379 N.Y.S.2d 923 (1975); Estate of Stephenson, 469 Pa. 128, 141, 364 A.2d 1301 (1976); see Phillips v. Moeller, 148 Conn. 361, 369, 170 A.2d 897 (1961). "[O]ne interested in an estate has the right to have its Representative wholly free from conflicting personal interests. . . ." Corey v. Corey, supra. When the executor of an estate places itself in a position where its interests conflict with those of the estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. `When [such] situation appears . . . it is the positive duty of the court to remove the executor. . . .' DavisCT Page 10420 v. Roberts, 206 Mo. App. 125, 129, 2216 S.W. 662
(1920)." Ramsdell, supra, at 65. (Emphasis in original.)
 "The existence of a potential conflict of interest does not, of itself, mandate removal of the defendant a [sp] executor. Removal of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. Carrol v. Arnold, 107 Conn. 535, 542, 141 A. 657 (1928); see Phillips v. Moeller [148 Conn. 361, 368, 170 A.2d 897 (1961) [; Murdoch v. Elliott, 77 Conn. 274, 256, 58 A. 718 (1904); Treat's Appeal from Probate, 40 Conn. 288, 291 (1873). In the absence of continuing harm to the interest of the estate and its beneficiaries, removal is not justified merely as punishment for a fiduciary's past misconduct. Carroll v. Arnold, supra, 543. Thus, in order to justify removing the defendant in this case, there must be evidence of a clear and continuing conflict of interest rendering the defendant unfit to perform its duties to the estate. The bare possibility of a cause of action on the estate's behalf against the defendant, if such a claim were frivolous or speculative, would not warrant removal. Whether the defendant has a conflict of interest that renders it unfit to continue in the service of the estate depends, in significant part, upon whether the estate's potential claims against the defendant have sufficient substance to warrant consideration by a successor fiduciary uninfluenced by a motive to avoid litigation. " (Emphasis added.)
Of further interest, the court in Ramsdell observed that it was not required to resolve the conflict of interest that it found, but it was sufficient that the potential conflict of interest "have sufficient substance to warrant consideration by a successor fiduciary uiunfluenced by a motive to avoid litigation. "
At the trial of these matters the only two witnesses were the plaintiff and the defendant, John Thomas Gorby, old warriors who have been battling for ten years. Although a transcript of their testimony would not necessarily disclose it, the atmosphere in the courtroom was so thick that you could cut it with a knife. In the plaintiff's own words, he described his relationship with the defendant as "strained" since the fee controversy developed in 1992. Ten years of continuous litigation has done little to thaw the icy relationship between them. It is absolutely CT Page 10421 clear that the defendant primary beneficiary does not want the plaintiff restored. Since 1998, when the substitute trustee, Union Trust Company, was appointed in both trusts there has been perfect harmony between trustee and beneficiaries.
Obviously, the protracted litigation between the parties is the main reason proferred by the defendant to support the plaintiff's removal. The court will discuss that matter shortly. The defendant did offer evidence as to four other considerations that he believes further support the removal. These generally involve the inter vivos trust because the testamentary trust was not funded until 2001. Some of the claims, however, do go back to the plaintiff's handling of the estate itself before the assets were removed to the trust in 2001.
First, the defendant claims that in the estate account there was a margin account requiring the payment of interest which he claims could have been avoided by paying it off. The plaintiff counters that his cash account was paying higher interest than he was paying on the margin account and, therefore, he was being prudent. The defendant next claims there were some check payments to him of estate income that bounced and the plaintiff covered them with personal funds. There were only four or five of these and they did not amount to much. Next, the defendant claims that the plaintiff was erratic in paying him income from the estate and trust assets and for long periods there were no payments. He blames this on the fact that he had challenged the plaintiff's fees. That cannot be proved, but it does indicate how the litigation has poisoned the relationship between the parties.
Lastly, the defendant claims that since the sale of his father's residence netting in excess of one million dollars the plaintiff kept all of these assets in money market type investments rather than being in equities. The plaintiff gave as his reason for his conservative investing that he had heard that the market was about to lose heavily.
In reviewing these specific claims, the court concludes that no one of these complaints alone or all four together would have justified the plaintiff's removal. The court does believe, however, that the continuous conflict between the parties was caused by the ongoing litigation over fees.
That leaves us with the defendant's main claim for removal. He maintains that the continuous litigation between the parties for over ten years, all related initially to plaintiff's attempt to seek a higher executor's fee and an attorney's fee from the estate and finally his attempt to have his counsel fees in pursuing those fees paid by the estate, have placed the plaintiff in a conflict of interest with the CT Page 10422 estate and trusts that have rendered him incapable of executing his trust.
Up until 1992, the relationship between the parties appeared to be reasonably cordial. That changed drastically when the dispute over fees began. The court accepts the fact that the plaintiff's only commitment to the defendant concerning an executor's fee was that it would be reasonable. There was no discussion that he would utilize the Union Trust fee schedule and no discussion whatsoever that he would charge an attorney's fee. He eventually did both. He initially set an executor's fee of $28,064, based on a percentage charge on the estate's assets, less those included for tax purposes only. He did that of his own volition because he believed it would be inequitable to the estate to pay him a fee on those assets which would go to the trust from which he would be paid another fee.
The plaintiff apparently did not know if he was entitled to a separate attorney's fee so he consulted his current attorney, William Phillips, to discuss the matter. He was advised by Phillips that it was permissible under Connecticut practice to charge a separate attorney's fee on a dollar for dollar basis of the executor's fee. The plaintiff then asked for an attorney's fee of $28,064, for total fees of $56,128. Certainly at this time, at least as to the attorney's fee, the plaintiff was sowing the seeds of a conflict of interest with the estate. He apparently had no time records as to what he specifically did as an attorney to the exclusion of what he did as the executor, but he charged exactly the same fee for both. No one presented any evidence as to whether Connecticut did in fact have such a practice or policy regarding charging dollar for dollar executor's and attorney's fees.
The beneficiaries felt the fees were too high, and the defendant at his own expense acquired the services of the law firm of Pullman Comley which moved to disallow the fees. What the plaintiff did next was to increase the request for his executor's fee to $45,898 in accordance with the Union Trust fee schedule even though he had originally described that schedule as "inequitable" to the estate. His personal dealing and conflict with his duty of complete loyalty to the estate had already commenced. His claim now for executor's and attorney's fees totaled $73,962.
After the hearing in the Probate Court, Judge Shannon allowed the plaintiff an executor's fee of $28,000 and nothing for an attorney's fee. It is of interest that the defendant did not appeal from that award even though he believed it to be too high. On the other hand, the plaintiff did, as to both the executor's fee and the attorney's fee. That litigation has been previously described. Suffice it to say, it went to CT Page 10423 the Superior Court, the Appellate Court, the Supreme Court and back to the Superior Court over the next four years.
The final result of that litigation after a full hearing was a Superior Court decision awarding the plaintiff a combined fee for his services as executor and as attorney in the amount of $25,000, $3,000 less than Judge Shannon originally authorized and $58,898 less than the plaintiff sought. It would not be unfair to characterize that sum as an over charge by the plaintiff against the estate.
Things were bad enough then between the parties but they were about to get worse. The defendant had by his own initiative and cost saved the estate $58,898. Had things stopped there, we might not be here now, but they did not.
Attorney Phillips had charged the plaintiff $25,000 for services and $3,423.81 for disbursements for representing his interest against the estate beneficiary over the plaintiff's personal fees. The plaintiff paid for all these services and disbursements right out of the estate's income. He then sought approval in the Probate Court for an allowance of those fees and disbursements and they were not allowed. He was essentially asking for the estate to pay for his services in a failed attempt to over charge the estate. The Probate Court disallowed it, and the plaintiff again took another appeal, which is pending before this court. This forced the defendant beneficiary to again hire counsel for the purpose of preserving estate assets, the very thing the plaintiff was required to do based on his fiduciary relationship. All of the plaintiff's efforts to this date, all of which would result in the diminishment of estate assets, had been unsuccessful.
These essentially were the facts available to the Probate Court when it removed the plaintiff as trustees of both trusts. There was no way of knowing then the outcome of the appeal, but the consequences of a similar result in the Superior Court would certainly present the plaintiff with potential future conflicts of interest with the estate initially and now the trusts. If the Superior Court disallows Attorney Phillips bill for fees and disbursements as a charge against the estate, which assets have now been transferred to the testamentary trust of which the plaintiff is trustee, he will be in the unusual position of having to collect for the trust from himself personally the sum of $28,342.31. How tenacious can he be against himself in collecting those funds, and if he does, how bitter will he be against the beneficiaries in both trusts, who have caused the result?
There is also the future potential conflict of interest over attorney's fees and disbursements of Attorney Phillips in representing the plaintiff CT Page 10424 in these two appeals as well as the other case pending before the undersigned. To the extent that the plaintiff pursues the trusts again for those expenses, the litigation may never end.
As was stated in Ramsdell, supra,
 "When the executor of an estate places itself in a position where its interests conflict with those of the estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. When [such] situation appears . . . it is the positive duty of the court to remove the executor . . .
The parties to these two trusts are the same so the acrimony that exists is the same for both. The conflicts of interest permeate both trusts. While these parties continue to battle, which battle may never end, the trusts have been quiet since the plaintiff's removal in 2000 and 2001 and that is how it should remain.
The court finds based on all the evidence that grounds exist under Connecticut General Statute § 45a-242 for the removal of the plaintiff as trustee in both cases and he is hereby removed.
 _________________ GORMLEY, J.