SOPHIE FACIUS, LUCY NEVILLE, ARNOLD FACIUS
vs.
VINCENZO ADORNO

Superior Court        Middlesex County        File #7081
                                                  #7082
                                                  #7083

Present:   Hon. ERNEST A. INGLIS, Judge.

Bertrand E. Spencer,          Attorney for the Plaintiffs.

Pelgrift & Blumenfeld,        Attorneys for the Defendant.

MEMORANDUM FILED APRIL 5, 1937.

INGLIS, J. These cases arise out of a collision between an automobile owned and operated by the plaintiff, Arnold Facius, in which the other two plaintiffs were passengers and a G. M. C. dump truck owned by the defendant and operated by one Frank Lastrina, which occurred at or near the corner of Broad and William Streets in Middletown at about 10:30 o'clock in the evening of October 26, 1936. The plaintiff's car was proceeding south on Broad Street and the defendant's truck was going east on William Street. As the plaintiff's car approached the intersection of the two streets, it was slowed down to about ten miles per hour and then as the driver saw the headlights of the truck he slowed down still more. The driver of the truck assuming that the plaintiff's car was going to turn left into William Street bore over to his left intending to let the car go ahead and pass around behind it. By that time both vehicles were close to the inter-section. The truck was turned into Broad Street cutting the corner so that its left wheels passed within about seven inches of the curb at the northwest corner and immediately collided with the right side of the Facius car, which by that time hav-ing been turned slightly to its left in an attempt to avoid the collision was practically at a standstill a short distance north of the intersection.

As a result of the collision, all of the plaintiffs were injured

and the Facius car was badly damaged. The collision was caused by the negligence of Lastrina in that he failed to keep his truck to his right of the center point of the intersection and in that after turning into Broad Street he failed to turn his car seasonably to the right and yield one-half of the traveled road in Broad Street to the Facius car. There was no contributory negligence on the part of any of the plaintiffs.

The substantial question of fact in the cases is as to whether, at the time of the collision, Lastrina was operating the truck in the course of his employment as Adorno's agent. It is agreed that the truck which Lastrina was operating was owned by Adorno. The statute (Cum. Sup. 1935, Sec. 1661c) raises a presumption, therefore, that Lastrina was the agent of Adorno and was operating the truck in the course of his employment. The presumption raised by the statute is not one which is overcome as soon as any substantial counter-vailing evidence is introduced but rather is one which shifts the burden of proof to the defendant and is effective until the defendant satisfies the trier by a fair preponderance of the evidence as to what the true facts of the situation were.

**O'Dea vs. Amodeo, 116 Conn. 58.**

With this in mind the following facts are found: Lastrina was regularly employed by Adorno to drive the truck and it was a part of his duty to take care of the truck. It was his duty to buy gasoline and oil and make minor repairs, and it was also his duty, subject to Adorno's directions, to keep general oversight over the truck.

Up to the Saturday preceding the accident the truck had been employed on jobs in the neighborhood of Hamburg and Salem. Two leaves of the springs on the truck had, however, become broken and pursuant to Adorno's telephoned instructions on the morning of Monday, October 26th, Lastrina drove the truck to Middletown, where both he and Adorno lived, for repairs. After purchasing the necessary materials, Lastrina and his brother started at about five P.M. on that day to make the necessary repairs. They did the work in the rear of the Poliner building which is located on Main Street in Middletown. Adorno himself was present during all of the time that the work was in progress.

While the work was going on, the two Lastrinas were talking about the fact that a sister of theirs who lived in Ansonia was visiting another sister who lived on William

Street about three blocks west of Main Street and Frank Lastrina announced his intention of going to see that sister after the work was completed. Adorno overheard that part of the conversation which related to the fact that the sister was in town but did not hear Lastrina say that he was going to call on her.

Adorno had no garage in Middletown for the parking of the truck and the custom had been to park the truck over-night on the job when it was outside of Middletown and, when it was in Middletown, for Lastrina to park it overnight at his home on College Street east of Main Street either in a driveway or on the street.

When the repair work was completed at about 7:30 P.M., Adorno directed Lastrina to go home, put the truck away and be ready to drive it to the job in the morning. The most direct course for Lastrina to take to get to his home would be to drive south on Main Street and turn east on College Street.

Instead of driving the truck directly to his home, Lastrina drove it, by just what course it does not appear, to his sister's home on William Street. William Street runs parallel with College Street and is the next street south of College Street. The sister's home to which he went was located in the third block west of Main Street.

Adorno had no knowledge of Lastrina's intention to drive the truck to his sister's home and did not know that he had done so until after the collision with the plaintiff's car. The truck itself was a heavy dump truck, not such a vehicle as is ordinarily used for the transportation of people alone but one designed for the carrying of materials. There was nothing in the relationship between Adorno and Lastrina from which the implied consent of Adorno to such use of the truck by Lastrina could be inferred.

Lastrina stayed at his sister's home until about 10:30 P.M., and proceeded easterly on William Street across Hamlin Street to Broad Street where the collision occurred. It had been his intention to continue on William Street across Broad Street and across Main Street to Water Street, which is the street parallel with Main and next east, then north on Water Street to College Street and then west on College Street to his home.

The broad principle of law applicable to this situation is, as stated in **Stone vs. Hills, 45 Conn. 44, 47, as follows:** "For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given and the circumstances under which the act is done, the master is responsible."

It should always be borne in mind that "this law is based on a rule of public policy, which declares that substantial justice is on the whole best served by making a master responsible for the injuries caused by his servant acting in his service, when set to work by him for his own benefit". **Loomis vs. Hollister, 75 Conn. 718, 722.** That is to say the reason why a master is held responsible for injuries caused by his servant is that it seems to be just that if one is getting the benefit of the services of another he should also be held to pay for such injuries as others may receive out of that service. If therefore a servant is on a venture of his own not directed by the master and from which the master is receiving no benefit, then justice does not require that the master be held responsible for the servant's acts and omissions.

**Barnes vs. Cuisina, 111 Conn. 335.**

**Greenberg vs. Lotz Asbestos Co., 109 Conn. 441.**

**Adomaitis vs. Hopkins, 95 Conn. 239.**

Whether a servant is on an errand of his own or is rendering services for the benefit of his master and therefore within the scope of his employment is ordinarily and except in cases which are clear either way a question of fact rather than a question of law.

**Ackerson vs. Jennings Company, Inc., 107 Conn. 393.**

**Butler vs. Hyperion Theatre Co., 100 Conn. 551.**

**Ritchie vs. Waller, 63 Conn. 155.**

The present case is not in line with **McKierman vs. Lehmaier, 85 Conn. 111; Butler vs. Hyperion Theatre Co., 100 Conn. 551 and Mastrelli vs. Herz, 100 Conn. 702** where it was held either as a matter of law or of fact that where the owner of an automobile has given his chauffeur permission to drive it off on his, the chauffeur's, own business with an express or

implied direction to return it to a particular place in order to continue his services, then as soon as the chauffeur starts on his return he is back within the scope of his employment, because in the present case it cannot be found that the master, Adorno, had either expressly or impliedly consented to the use of the truck by Lastrina for the latter's own errand.

In the present case there had been a very material diversion from the master's business by Lastrina. This is true both because he had gone several blocks off the course which he should have pursued to accomplish Adorno's purposes and also because he was using the truck for about three hours longer than he should have been using it. He clearly was conferring no benefit on Adorno by calling on his sister and he was doing it without Adorno's consent and indeed in direct violation of Adorno's parting instructions.

It is therefore concluded as a matter of fact that, at the time of the collision Lastrina was engaged solely on his own errand and was not acting within the scope of his employment as Adorno's agent.

Judgment may enter in each case for the defendant to recover of the respective plaintiffs his taxable costs.