[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This case arises out of an incident in which the minor plaintiff went to a playground with one of the defendants, Janet Saddler. The playground was located on school property. The plaintiff claims he was injured while using a spiral slide on the playground.
The plaintiff in the First, Second, Third and Fourth Count claims that the Town of Enfield, the Board of Education, the chairperson of the Board and the town's superintendent of schools is liable for his injuries under negligence and nuisance theories.
The plaintiff has sued the same defendants in a Sixth Count based on strict liability claiming these defendants authorized and encouraged the use of a spiral slide by youngsters such as the plaintiff, when such activity was inherently and intrinsically dangerous.
The above named defendants have filed a motion for summary judgment. They argue that the plaintiff's claims in the First, Second, Third and Fourth Count are barred by operation of Section 52-557g C.G.S.A., the so-called recreational use statute. They also maintain that they are entitled to judgment on the strict liability claim in the Sixth Count because a playground slide is not a highly or intrinsically dangerous instrumentality under our law. CT Page 1904
In this case the individual co-defendant, Janet Saddler, has objected to the previously named defendants' motion for summary judgment. She would appear to have standing to do so and the named defendants do not question that standing, cf.Chashin v. Wirth, 6 Conn. L.Rptr. 390 (1992).
 I.
In his complaint the plaintiff alleges he was injured while climbing on a slide with other children. The Director of Facilities submitted two affidavits. In his earlier affidavit he states the playground where the plaintiff was injured was open to the public free of charge. In a later affidavit the director states at the time of the incident, and up until the filing of the affidavit, the town owned the land on which the playground slide was located.
The recreational use statute, § 52-557g, would seem to provide immunity from the claims made in the first four counts.
 (a) Except as provided in Section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee, or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.
 (b) Except as provided in Section 52-557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) make any representation that the premises are safe for any purposes; (2) confer upon the person who enters or uses the land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owned; or (3) assume responsibility for or incur liability for any injury to person or property CT Page 1905 caused by an act or omission of the owner.
The First, Second and Third Counts are based on a negligence theory; the Fourth Count is based on a Nuisance theory. The statute has been held to apply to nuisance as well as Negligence actions, Genco v. CLP, 7 Conn. App. 164, 171
(1986).
The existence of the slide on the playground certainly served a "recreational purpose" as defined in § 52-557(f)(3) and thereby imported into § 52-557g. See Quinlan, ppa, et al,Rowayton Elementary School, et al 10 CONN. L. RPTR. 331, 9 CSCR 12
(1994). The town is the owner of the land. Municipalities and municipal employees are considered "owners" under the act, Manning v.Barenz, 221 Conn. 256, 261 (1992). There is no claim by way of the complaint or affidavit that the defendant acted in a malicious or wilful way so as to bring them out from the protection of the statute (§ 52-557h). In fact the plaintiff doesn't contest any of these legal positions but in her first memorandum merely argued that the defendants hadn't established any of them were the owners of the land. A second affidavit filed by the Director of Facilities of the Town asserts that as noted the town is the owner of the property. The Board of Education occupies the land and for the purposes of this statute is the alter ego of the town and certainly would seem to fall within the definition of an "owner" as defined in § 52-557f(3).
The defendants should prevail on their motion as to the first four counts and cases cited by the defendants support that position, Quinlan v. Rowayton Elementary School, supra,Sanez v. Westport, 8 CSCR 501 (1993), Burkhart v. Williams,7 Conn. L. Rptr. 294.
The defendants motion is granted as to the First, Second, Third and Fourth Counts.
2.
The Sixth Count is based on a strict liability theory and the plaintiff's claim is that any use or contemplated use of this playground slide constitutes an activity which is inherently and intrinsically dangerous.
Strict liability based on the ultra hazardous activity CT Page 1906 engaged in by a particular business or caused by the maintenance or providing particular equipment or devices used in a certain way or by the storage of particular materials has been strictly defined by the courts.
The defendants provide a useful collection of the cases. It has been held that blasting with dynamite is intrinsically dangerous, Norwalk Gas Light Co. v. Borough of Norwalk,63 Conn. 495 (1893), Alexander v. Sherman's Sons Co., 86 Conn. 292
(1912). The operations of an electric company and a gas company have been held not to be intrinsically dangerous,McAdam v. Central Railway Electric Co., 67 Conn. 445 (1896),Pourde v. Hartford Electric Light Co., 31 Conn. Sup. 192
(1974). An automobile has been held to be an instrumentality that was not intrinsically dangerous, Greely v. Cunningham,116 Conn. 515 (1922), nor is a roller coaster, Godfrey v.Connecticut Co., 98 Conn. 63 (1922). The doctrine has been defined in Section 520 of the Restatement of Torts (Second).
As noted in the Connecticut Law of Torts, Wright, Fitzgerald, Ankerman (3d ed) § 122 at p. 356, in our state the field of highly or intrinsically dangerous activities has usually been limited to blasting and dynamite cases. But a pile driving operation was held to be such an activity,Caporale v. C.W. Blakeslee Sons, Inc., 149 Conn. 79 and the Restatement of Torts (Second) § 520 by its terms doesn't confine the doctrine to blasting and dynamite cases.
Here the plaintiff argues that whether an activity is abnormally dangerous is a question of fact which should be determined by the jury. It is certainly true that the issue of negligence and whether the standard of due care has been violated is ordinarily an issue for the jury, Amendola v.Geremia, 21 Conn. App. 35, 38 (1990). However, the Restatement takes the position that: "whether the activity is an abnormally dangerous one is to be determined by the court. . . In this it differs from questions of negligence," Section 520, comment (1) p. 42. One of the first Connecticut cases in this area, Norwalk Gaslight Co. v. Borough of Norwalk, supra, went so far as to say in reviewing the trial court's charge that blasting with dynamite is intrinsically dangerous and the court should have taken judicial notice of this, Id. at p. 527. Also, see Bassi v. City of Derby, 1 CONN. L. RPTR. 36,5 CSCR 24, 25 (1990) where court concluded on a motion to strike as a matter of law that playing little league baseball while a hole exists CT Page 1907 in a protective fence is not an intrinsically dangerous and ultrahazardous activity, cf. Smith v. Lenoci, 11 CONN. L. RPTR. 51, 9 CSCR 191 (1994).[1]
However, having said all that, even if the issue as to whether a particular activity or instrumentality is ultrahazardous is a question of law that does not mean that it is appropriate to strike such a claim. Nor is it necessarily even appropriate to grant summary judgment motions against such claims where reliable expert testimony by way of affidavits or other documents raises complicated issues as to whether an activity or instrumentality is ultrahazardous under the tests set forth for example in Section 520 of the Restatement. A court may feel it is more appropriate to allow the evidence on which it bases its decision of law to be developed at trial especially where the type of activity or instrumentality has never been subject to court review before on the question of whether it is ultrahazardous.
In order to persuade the court to take such a position, however, the plaintiff must submit more than was submitted here. To the memorandum in opposition to the motion, the plaintiff attached an unsworn letter from a party whose letterhead identifies him as a consulting forensic engineer and a licensed professional engineer. He does not give his qualifications. He describes in some detail the physical nature of the slide, its measurements, height, length of various portions of the slide and the slope of the slide. He says he consulted various (unidentified) regulations that indicate "normal" not spiral slides like the subject one have 30 degree slopes. This slide has a slope of 28.7 degrees below this figure. He says regulations on spiral slides don't address maximum average slope. He then goes on to say the school on whose property the slide is located has grades kindergarten through six. He then says without saying why that "in the writer's opinion that this type of slide would be relatively hazardous for children in the lower age of this group." He notes no warnings were posted on the slide as to the age of the children who should use the slide. He concludes "the subject slide would be hazardous for younger children." He gives no basis or reason for his opinion and never even defines the age at which a child may use the slide without intrinsic danger.
There is nothing in the complaint or in this expert's CT Page 1908 report from which the court can conclude that this slide is ultrahazardous or in any way differs from other slides in other playgrounds. Neither has the court been provided with sufficient reason to conclude that the decision on this question of law should in fairness to the plaintiff be postponed until evidence has been received at trial.
The motion for summary judgment is granted as the Sixth Count.
3.
The court should also note that the parties in their briefs and at oral argument raised another issue. The co-defendant Saddler argued that assuming the court were to grant the summary judgment motion of her co-defendants because they are immune from liability under the recreational use statute, they should remain in this suit for apportionment purposes.
The defendants oppose remaining in the case for apportionment purposes. They cite the language of Section 52-572h(c) which in relevant part reads:
 "The negligence action to recover damages resulting from personal injury . . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his (sic) proportional share of the recoverable economic damages . . ."
The defendants argue "against whom recovery is allowed" means the drafters intended this statute to apply only where the plaintiff has a "valid" cause of action against the party to whom a portion of the damages is sought to be assigned. Since summary judgment has been granted the defendants argue they are not parties "against whom recovery is allowed."
The defendant Saddler disagrees with this analysis. She points to the same above quoted statutory language and says the operative language is "damages caused by the negligence of more than one party." The second factor concerns "liable" parties. The operative language of the statute under this concept would be "each party against whom recovery is allowed shall be liable." By emphasizing what she takes to be a CT Page 1909 dichotomy in the statutory language the defendant argues the legislature intended that there first be a determination of the percentage of negligence of each party as distinguished from a determination of the liability of each party, second only those parties against whom "recovery is allowed" are liable for damages. The defendant Saddler goes on to argue that this legislative intent is also made clear in subsection (d) of Section 52-572h which dictates how the proportionate share of damages of liable parties as distinguished from negligent parties is to be calculated. In other words, the legislature makes the liable party the numerator of the fraction and also makes the denominator consist not of other liable parties (which it could have) but of "all parties whose negligence was the proximate cause of the injuries." Thus all potentially negligent parties are included in the calculation and therefore the parties to the action. They only need to be found negligent not liable nor subject to a damage recovery.
According to the defendant, this interpretation of Section 52-572h comports with the legislative intent that a defendant should only be responsible for that defendant's proportionate share of damages.
In analogous situations courts have reached results similar to the one being advocated by the defendant Saddler. Thus, McLaughlin v. Morloch, 7 Conn. L.Rptr. 55 (1992) involved a case where a municipality was one of the defendants. It was held that under Section 52-572h the amount of damages a co-defendant was required to pay could be reduced by the percentage of negligence of a municipality because of a defective highway even though the plaintiff couldn't recover from the municipality since it wasn't the sole proximate cause of the injuries, Id. at page 56. Also, it has been held that parties "immune" to recovery because of statute of limitation defenses can remain party defendants for apportionment purposes, see for example, Kennedy v. Martinez,7 Conn. L.Rptr. 354 (1992), Krynitsky v. Dictiker, 8 CSCR 387 (1993),Brown v. Ill, 9 Conn. L.Rptr. 429 (1993), Tedesco v. Whittlaw,9 Conn. L.Rptr. 149 (1993), contra Belanger v. Maynard,6 Conn. L.Rptr. 553 (1992).
The problem I have is that Section 52-102 is the appointed vehicle for bringing in "parties" for apportionment purposes under Section 52-572h. Section 52-102 was rewritten in 1987 when Tort Reform II was passed. In that year, this CT Page 1910 language was added to Section 52-102.
 . . . provided no person who is immune from liability shall be made a defendant in the controversy."
If Section 52-102 and Section 52-572h are read together doesn't this language mean that "parties" who are "immune from liability" can't be brought into a case for apportionment purposes? The cases just cited and Baker v. Franco,7 Conn. L.Rptr. 622 (1992) have to create a "party" who is not really a party and a "defendant" who is not really a defendant as those entities have been traditionally defined — they create a new concept, a "party for apportionment purposes."
This is all well and good if it can be said that the only policy goal occupying the Legislature at the time Tort Reform was passed was that defendants should only pay their proportionate share of damages. But for centuries before Tort Reform we had a notion that if you proximately caused another's injuries you had to pay for all those injuries even if others not sued were responsible for damage to the plaintiff. As between the plaintiff and the particular defendant this was fair it was thought because of the way "proximate cause" was defined. However, it was certainly true that a particular defendant actually sued could regard this as unfair vis-a-vis other defendants not sued by the plaintiff. Also, insofar as the plaintiff went after only a so-called deep-pockets defendant or could otherwise pick and choose the defendant, there was an added element of unfairness or perhaps irrationality in the recovery system.
But to resolve these concerns is it really necessary to create new situations of unfairness or remove from the courts when they have to interpret a statute like § 52-572h the right to engage in a weighing process when competing equities are involved? In other words, if a particular defendant has proximately caused another's injuries, is it fair to tell the injured plaintiff that his or her ability to recover adequate damages may be severely restricted against certain co-defendants against whom recovery actions are barred by statutorily created immunities that were created years before Tort Reform was dreamed of and for policy reasons having nothing to do with the consideration involved in Tort Reform? The class of plaintiffs finding themselves in this situation are not those whose actions in picking and choosing CT Page 1911 defendants provided some of the impetus for Tort Reform. Why can it not be argued that the 1987 amendment to Section 52-102 was passed with some of these concerns in mind?[2]
In any event, some of the considerations just expressed by the court were not brought up at oral argument. Also, I'm not entirely sure that ancillary to my ruling on a defendants motion for summary judgment wherein the defendants argue they are not liable to a plaintiff on the theories of liability advanced, I can gratuitously rule that the prevailing defendants can remain in for apportionment purposes. That was not the gravamen of the original motion and had nothing to do with the relief requested.
I think the fairest way to proceed would be for the defendant Saddler to file a motion to have these defendants brought into the case now for apportionment purposes. The plaintiff should be given notice and the motion and procedures should follow the decision in Baker v. Franco, supra. I will therefore reserve any decision on the status of the prevailing defendants here on the Section 52-572h question so that the defendant Saddler has had a chance to respond to my concerns, the plaintiff is fully notified and the procedural record is made clear by the filing of the motion mentioned above.
I will, however, grant the defendants motion for summary judgment on the First, Second, Third, Fourth and Sixth Counts.